**BANCO METROPOLITANO, S.A., Plaintiff,**

v.

**DESARROLLO DE AUTOPISTAS Y CARRETERAS DE GUATEMALA, SOCIEDAD ANONIMA, Through JUNTA INTERVENTORA OF DAG; and Banco De Guatemala, Defendants.**

No. 85 Civ. 1977 (RWS).

United States District Court, S.D. New York.

July 8, 1985.

Shea & Gould, New York City, for plaintiff; Richard F. Czaja, Susan B. Ratner, George G. Nelson, New York City, of counsel.

Sage, Gray, Todd & Sims, New York City, for defendants Junta Interventora; Jerry J. Strochlic, John A. Forlines, III, New York City, of counsel.

OPINION

SWEET, District Judge.

Defendants Desarrollo de Autopistas y Carreteras de Guatemala, Sociedad Anonima ("DAG") through Junta Interventora of DAG ("Intervention Commission") and

Banco de Guatemala ("Banco de Guatemala") have moved under Fed.R.Civ.P. 12 to dismiss the complaint of plaintiff Banco Metropolitano, S.A. ("Banco Metropolitano") for lack of *in personam* jurisdiction and on the grounds of *forum non conveniens*. Banco Metropolitano seeks to recover on two promissory notes issued by DAG and guaranteed by Banco Guatemala. The defendants' motion to dismiss on the basis of *forum non conveniens* is granted for the reasons set forth below.

This action was initiated by Banco Metropolitano, a Guatemalan bank, in the Supreme Court of the State of New York, seeking recovery on the promissory notes in the respective amounts of $850,000 and $1,000,000 issued formally on February 19, 1981 by DAG to Estorial Associated, Inc. and Devco Development Co., Inc., respectively, in New York, payable February 19, 1982. Both notes were guaranteed by Banco de Guatemala, the central bank and monetary authority of the Republic of Guatemala. Banco Metropolitano alleges that it is the present holder of the notes, assigned for good and valuable consideration and that on the due date it became entitled to the amount with interest as provided in the notes at 18% from the due date.

The notes state, as translated:

Desarrollo de Autopistas y Carreteras de Guatemala, Sociedad Anonima, the Government of the Republic of Guatemala and Banco de Guatemala expressly waive any presentation, protest, notice of nonpayment or notice of refusal to pay this Promissory Note. They also waive any right of immunity from suit; and Desarrollo de Autopistas y Carreteras, Sociedad Anonima and Banco de Guatemala waive any right to be tried by their own courts and subject themselves to the jurisdiction of the Courts of the State of New York, United States of America.

On April 26, 1982 the Republic of Guatemala by Decree 23–82 revoked the concession agreement under which DAG was operating, finding it to be "detrimental to the Nation's sovereignty and the country's best interests ..." and finding that "appropriate steps must also be taken in order to prevent deterioration of the balance of payments, preserve public finances and protect the country's economy in general." The Republic also placed DAG under the control of an Intervention Commission, and on March 14, 1983 the Intervention Commission was authorized to take steps to recover all DAG assets, including all sums unspent. The following year a Claims Procedure was established for DAG creditors.

On February 7, 1983 Banco Metropolitano was advised that certain notes issued by DAG had been "immobilized." The Bank challenged this procedure as to three DAG notes, and its effort to nullify the "immobilization" was denied. The denial was upheld on appeal, and the Bank was fined for seeking to enjoin the "immobilization." These events followed the disclosure of the allegedly fraudulent activities of DAG which produced obligations of $50 million dollars but no highways and resulted in the August 1983 conviction of its former president.

On February 18, 1985 the General Manager of the Banco Metropolitano accompanied by its president and another person delivered a copy of the summons and complaint to a member of the Intervention Commission and to the Manager of the Banco Guatemala. The summons and complaint were in English, and it has been stated without contradiction that February 18, 1985 was one day before the expiration of the relevant statute of limitations under Guatemalan law. However, no proof has been adduced on the applicability or term of the Guatemalan statute of limitations and for the purposes of the pending motion it remains an unresolved issue, though the allegation is certainly relevant.

According to Banco Metropolitano, the summons and complaint were accepted at the Banco de Guatemala. The Banco de Guatemala's Legal Counsellor advised the Banco Metropolitano officers that under an agreement between the governments of Guatemala and the United States notice of process had to be served on the Consulate

of the Republic of Guatemala in New York. This was done the following day. The Legal Counsellor has denied rendering this advice. No further service was undertaken, nor has any authority been cited under which the consulate in New York can accept service for Banco de Guatemala.

The affidavits and memoranda submitted in support and in opposition have resolved at least two issues: the role of the Intervention Commission in this litigation and the status of DAG and Banco de Guatemala. DAG was named "through" the Intervention Commission and the Banco Metropolitano does not now maintain that the Commission itself is a party. There is also no contest concerning the status of Banco de Guatemala and the Intervention Commission as "foreign states" as defined by the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et seq.* ("FSIA"). What is at issue initially is the adequacy under the FSIA of the service described above and, in the event that the service was not adequate, the ability of Banco Metropolitano to cure the inadequacy, *nunc pro tunc.* The resolution of those issues as set forth below also require consideration of the *forum non conveniens* contentions of the defendants.

Service of process on an agency or instrumentality of a foreign state, such as the Banco de Guatemala, must be made pursuant to § 1608(b) of the FSIA which provides:

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request, or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

(C) as directed by order of the court consistent with the law of the place where service is to be made.

Except as noted below, "no special arrangement" between the plaintiff and the agency exists, and it is Banco de Guatemala's view that subsection (2) providing for delivery of the summons and complaint is limited to such delivery "in the United States," the modifying phrase being construed to apply to the "by delivery" language, not simply the authorized agent language. Simple grammatical construction, presumably aided by punctuation and the plain language would appear to defeat Banco de Guatemala's contention, and there are no decisions construing the language. The position is redeemed, however, by the legislative history and the construction of the entire section.

The only legislative history cited is the House Report related to the proposed FSIA, stating as follows:

If no such [special] arrangement [for service of process] exists, then service must be made under subsection (b)(2) which provides for service upon officers, or managing, general or appointed agents in the United States of the agency or instrumentality....

If there is no special arrangement and if the agency or instrumentality has no

representative in the United States, service may be made under one of the three methods provided in subsection (b)(3). 1976 U.S.Code Cong. & Ad.News 6604, 6624.

This Report clearly implies that subsection 2 is to relate to delivery within the United States. Banco Metropolitano seeks to blunt the effect of the Report by pointing out the plain language of FSIA.

However, the logic and structure of the subsections compels the conclusion that subsection (b)(2) applies to delivery in the United States where it is presumed that officers of the foreign state will have familiarity with English, or at least access to such familiarity, while § (b)(3) applies to service in the country of the foreign state to be served. While the provisions are not explicitly alternative, the structure and logic of FSIA, together with the legislative history, support Banco de Guatemala's position. The service under (b)(2) was therefore invalid.

Banco Metropolitano suggests, however, that service on the consulate be viewed as service under § (b)(3)(A), "as directed ... in response to a letter rogatory or request," and Banco Metropolitano seeks to be permitted to correct the technical defects of this method of service, *nunc pro tunc*.

Although it could well be argued that the formalities contemplated by § (b)(3)(A) were not accomplished, because of the absence of a translation, a request pursuant to § (b)(3)(A) was made by the appearance of the Banco Metropolitano personnel on February 18, and the instruction there given by the Legal Advisor of the Banco de Guatemala to serve the consulate in New York. This constituted service "as directed by an authority or foreign state." However, the fact of the instruction is now at issue, with affidavits of two of the actors at odds as to whether the instruction was ever given. Although the burden of establishing jurisdiction over a defendant, by a preponderance of the evidence, is on the plaintiff, until an evidentiary hearing is held the plaintiff need make only a *prima*

*facie* showing that jurisdiction exists. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir.1985). In the absence of an evidentiary hearing, all doubts must be resolved in favor of the plaintiff. *Id.* Consequently, Banco Metropolitano's affidavits will be taken as true, and service "as directed" is found to have occurred.

A *nunc pro tunc* cure of the failure to serve a translation would materially affect the substantive rights of the Banco de Guatemala in the event that the Guatemalan statute of limitations was held to be applicable. However, direct authority has been cited by Banco Metropolitano permitting a *nunc pro tunc* cure of service under the FSIA. In view of service on the consulate in New York, and in view of the receipt of actual knowledge of the summons and complaint in Guatemala, albeit not in a Spanish version, and without mailing by the clerk of the court, substantial compliance has been achieved, as it was in *International Schools Service v. Government of Iran*, 505 F.Supp. 178 (D.N.J.1981); *Harris v. National Iranian Radio & Television*, 691 F.2d 1344 (11th Cir.1982), and *New England Merchants Nat. Bank v. Iran Power Generation and Transmission Co.*, 495 F.Supp. 73 (S.D.N.Y. 1980). Obviously, the facts here present none of the political justifications and difficulties of the sort encountered in the Iranian situation. Nonetheless, under the facts here presented, strict enforcement of the unconstrued provision of the FSIA would be inappropriate. The service can be found to have been accomplished *nunc pro tunc* to provide this court with jurisdiction. Given the nature of the issues presented and the problems intended to be addressed by the FSIA, strict enforcement of its technicalities here would be inappropriate.

However, Banco de Guatemala's motion to dismiss on *forum non conveniens* ground is granted, despite the express submission to jurisdiction in New York as construed in the DAG notes The consent to jurisdiction in the notes differs from the choice of forum presented in *The*

*Bremen v. Zapata,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and our Court of Appeals has recently sanctioned consideration of *forum non* issues where there has been a consent to jurisdiction. *Proyecfin de Venezuela v. Banco Industrial,* 760 F.2d 390 (2d Cir.1985). While finding that jurisdiction could be exercised where a contract waived jurisdictional objections, the court in *Proyecfin* also specifically noted that the principles of *forum non* could be raised on remand.

The notes themselves in form and terms provide the only connection to New York. There are no witnesses or documents or any evidence stated to be in New York. The parties are all Guatemalan entities, and there has already been litigation on the subject of these and similar notes in Guatemala. None of the events underlying the intervention of the government or the alleged fraud requiring the intervention have any connection with New York. The practical problems involved in this trial, the availability of compulsory process for mandating attendance of the unwilling, and the relative ease of access to proof all militate towards granting the motion to dismiss on grounds of *forum non conveniens. See Gulf Oil v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Calavo Growers v. Belgium,* 632 F.2d 963 (2d Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981).

Banco Metropolitano seeks to avoid the courts of its residence chiefly on the claim that no relief can be obtained there, citing the rulings related to "immobilization" of the notes. To this court's untrained eye, these rulings do not appear to be dispositive of whatever claim Banco Metropolitano may have in Guatemala under Guatemalan law against the guarantor of the notes. While recovery may be difficult, the facts presented thus far have failed to demonstrate that ultimate recovery has been precluded. Indeed, if such were the case, it is probable that this action would also ultimately be barred under commonly applied rules of comity and *res judicata. Murphy v. Gallagher, et al.,* 761 F.2d 878 (2d Cir., 1985); *Kenner Products v. Societe Fonci-*

*ere et Financiere,* 532 F.Supp. 478 (S.D.N. Y.1982).

Consent to jurisdiction in New York does not preclude the application of a *forum non conveniens* defense, and here, despite the form of the notes at issue, all the relevant factors point to a Guatemalan resolution of the disputes between two of their banks.

*Conclusion*

The motion of the Banco de Guatemala and DAG to dismiss on grounds of *forum non conveniens* will be granted. The clerk is directed to enter judgment dismissing the complaint with costs.

IT IS SO ORDERED.